<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP JOHNSON, *pro se*<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>Public Services Enterprise Group, PSEG Services Corporation, Public Service Electric and Gas Company, Essex County College.<br><br>　　　　Defendants. | Civ. No. 10-3795 (DRD)<br><br><u>O P I N I O N</u> |

PHILIP JOHNSON

　　*Pro se.*

ZUCKER, FACHER & ZUCKER, P.A.
Paul J. Soderman, Esq.
One Passaic Avenue
Fairfield, NJ 07004

Suzanne M. Klar, Esq.
80 Park Place, T5D
Newark, NJ 07102

　　*Attorneys for Defendants.*

<u>**DEBEVOISE, Senior District Judge**</u>

　　This case arises out of the alleged breach of contract, employment discrimination, and related tort claims raised by Plaintiff Philip Johnson, a student-intern enrolled in a training program at Essex County College, for the purposes of work placement at Public Service Electric

and Gas Company ("PSE&G").  For the reasons set forth below, the motions for summary judgment are GRANTED.

## I. BACKGROUND

Pro se plaintiff Philip Johnson filed the within Complaint on July 27, 2010.[1]  The Complaint asserts claims against Public Service Enterprise Group ("PSEG"), PSEG Services Corporation, Public Service Electric and Gas Company ("PSE&G"), and Essex County College for breach of contract, employment discrimination and a litany of torts violations.  Issues related to the proper naming of parties in the caption arose numerous times in the course of proceedings.

Mr. Johnson's November 8, 2011 motion to amend the caption is still outstanding, as the parties could not agree on a stipulated caption and no order amending the caption has been entered by the Magistrate.[2]  Finding good cause to correct the Caption, the Court hereby orders that the caption be amended to include the following properly named defendants:  Public

---

[1]  The Equal Employment Opportunity Commission granted Mr. Williams a notice of right to sue on May 3, 2010.

[2]  Mr. Johnson has three times attempted to amend the caption.  Defendants argue that Public Services Enterprise Group was improperly pleaded based on its acronym ("PSEG"), and that PSEG Services Corporation was improperly pleaded as "PS&G Services Corporation."  Additionally, Mr. Johnson seeks to amend the caption to add Public Service Electric and Gas Company ("PSE&G") as a named party because the underlying correspondences from which the alleged contract originates were written by PSE&G.
   Mr. Johnson's first two efforts to amend the caption resulted in an order issued on August 9, 2011 by the Magistrate Judge, directing the parties to electronically file a stipulated order concerning the corrected caption. (Doc. No. 23.)  Subsequently, on November 8, 2011, Mr. Johnson submitted a motion to amend the caption. (Doc. No. 29.)  Thereafter the instant motions for summary judgment were filed, and no response to the motion to amend the caption was entered.  A status conference with the Magistrate Judge was held on February 21, 2012, however the ensuing order only related to outstanding discovery issues.  The Magistrate Judge later ordered a status conference for March 21, 2012, at which, "[i]f appropriate, the Court will address the outstanding issue regarding the case caption . . ." (Doc. 41.)  The status conference was then adjourned without a date.  A pretrial Conference is now set for September 27, 2012, and a Final Pretrial Order is anticipated to be filed on or after October 1, 2012.

Services Enterprise Group ("PSEG"), PSEG Services Corporation, Public Service Electric and Gas Company ("PSE&G"), and Essex County College. This opinion names the parties as such, as is also reflected in the caption.

Mr. Johnson participated in a training program at Essex County College which PSE&G participated in, entitled the Energy Utility Technology Degree Program ("EUTD Program"). Enrolled students were offered the opportunity to apply to PSE&G for a temporary position. To be considered for this temporary position, the applicant was required to successfully complete specific course work in a county college participating in the EUT Program. Employees hired through this program were hired for a limited duration and at an "at will" basis. Additionally, as a student in the EUTD Program, Mr. Johnson was required to sign an "Energy Utility Degree Program Student Agreement," which includes an acknowledgement that in order to participate in an internship, he must "[s]uccessfully pass the company's background check with no significant patterns of criminal activity within the last five years."  (Casey Cert., Ex. B.)

Mr. Johnson submitted an application for employment on January 9, 2009. (Casey Cert., Ex. C.) The employment application included an affidavit in which Mr. Johnson attests that he understands and agrees that his employment is contingent upon a satisfactory background investigation. (Id.) The signed affidavit provided: "I understand that any misrepresentation or omission of material information will result in my rejection for employment or dismissal after employment." (Id.) The employment application authorized PSE&G to use an outside agency to investigate his background and to verify the information which Mr. Johnson provided on his application. (Id.)

3

Mr. Johnson attached to his employment application one page of his Federal Bureau of Investigation ("FBI") Record of Arrests and Prosecutions ("RAP Sheet").[3]  (Id.)  The one page submitted, of the twenty-four page document, outlines four incidents:  (1) A third-degree conviction for a charge of petit larceny received on December 6, 1984, which resulted in a sentence for time served and a probation term of three years; (2) A conviction of disorderly conduct for a charge of unlawful possession of marijuana received on January 10, 1986, which resulted in a conditional discharge and fine paid; (3) an arrest or charge for criminal contempt and criminal trespass on May 13, 2006; and (4) an arrest or charge on August 31, 2006 for criminal contempt, acting in a manner to hurt a child, and harassment.  (Casey Cert., Ex. C.)  The dispositions of the charges from nearly thirty years prior are clearly indicated therein.  Of import here however, is that the dispositions of the latter two offenses, those within five years of the employment application, are not listed on the RAP Sheet.

In what appears to be a matter of practice and/or policy, the background checks are not ordered by PSE&G until a conditional offer of temporary employment is accepted by the applicant, with the offer being conditioned upon a satisfactory background check.  (Casey Cert. at ¶ 5.)  Thus, on April 23, 2009, Mr. Johnson received from PSE&G an "offer [of] temporary employment . . . conditional upon a satisfactory background investigation, documentation to confirm [ ] eligibility for employment in the United States, successful completion of a physical examination or drug screen that includes testing for abused drugs, including marijuana, and passing courses . . . and the internship training course associated with [ ] enrollment in PSEG's

---

[3]  During oral argument on October 1, 2012, Mr. Johnson presented to the Court that he only has this one page of his RAP Sheet, and therefore could not produce the remaining pages.

Energy Utility Technology Degree Program." (PSE&G Apr. 23, 2009 Letter, Compl., Ex. A) (emphasis added). The tentative start date of employment was listed as May 11, 2009. (Id.)

However, an issue ultimately arose with regard to the background check conducted by a third party agency operating with PSE&G, First Advantage. The background report was first ordered by PSE&G on May 6, 2009. (Casey Cert., Ex. D.) Two days later, Mr. Johnson received a notification from PSE&G that the agency was unable to verify his complete criminal history. (PSE&G May 8, 2009 Letter, Compl., Ex. A.) The letter instructed that Mr. Johnson report any inaccuracy to PSE&G within five days, and that PSE&G would not make a final employment decision until May 22, 2009. The letter further informed Mr. Johnson of the right to obtain a free disclosure of his file from the agency if he requested the report within sixty days, and the right to dispute directly with the agency the accuracy or completeness of any information provided by it. Last, the letter warned that should PSE&G not hear from Mr. Johnson, a formal decision concerning his employment would be issued.

According to PSE&G's representations to the Court, additional paperwork or explanation was necessary in order to verify Mr. Johnson's identification. Specifically, PSE&G represented to the Court in oral argument on October 1, 2012, that because there was no disposition indicated on Mr. Johnson's self-reported RAP Sheet for 2006 arrests or charges, Mr. Johnson's identification could not be verified. The alleged inability to verify his identification occurred despite the fact that no criminal history was indicated on the background check actuated by PSE&G.

Mr. Johnson responded to the May 8, 2009 Letter by going to PSE&G's Human Resources Department and speaking with a Ms. Hollman there. (Opp. Br. at 8.) Mr. Johnson provided PSE&G with all the documentation in his possession related to his criminal

background. Ms. Hollman indicated that if one's previous criminal record is not significant, the individual would not be disqualified from employment.

Mr. Johnson asserts that he "responded following first advantages instructions [sic] by providing all the necessary paper work to ms. Hollman [sic] that properly identified me, as they stated that they could not properly identify who I was, and that is all they needed to complete the process. A week later I got the second 'adverse' letter." (Opp. Br. at 8.) However, the corporate defendants assert that PSE&G has no record of Mr. Johnson contacting the company to contest the decision, thus the rescission of the temporary conditional offer therefore became final on May 22, 2009. (PSEG et al. MSJ Br. at 3.)

The confidential Pre-Employment/Security Screening report issued by First Advantage was completed and updated on May 13, 2009. (Casey Cert., Ex. D.) The background summary lists Mr. Johnson as having a "PASS" status with regards to previous employment and educational history, his Social Security Number provided, "NationScan Plus", "County criminal", and "Statewide". (Id.) The only other item, listed as "REVIEW" status, was his driving history with New Jersey. (Id.) The background check further informs that Mr. Johnson received two points for failing to obey a traffic device, and that his driver's license had been revoked and restored the year prior. Curiously, as previously stated, the criminal arrests and convictions self-disclosed by Mr. Williams in his employment application did not appear in the background investigation.

Mr. Johnson argues that the report did not reveal anything unsatisfactory, and that he was terminated following a visit to the corporate headquarters for his medical and equipment fitting. Mr. Johnson asserts that PSE&G's inability to verify his complete criminal history is pretext for employment discrimination based on his race, color, sex, religion, national origin, disability ("or

perceived – 'background'"). Mr. Johnson alleges that the Defendants discriminated against him, as described:

> i entered a training program with PSEG, through Essex County College, which was paid for through unemployment benefits and grants. i attended the required classes for 1 year and was to begin my paid internship. i was not paid for attending classes on PSEG properties. i went to 'head quarters' (50 Park Plaza) for testing a number of weeks before beginning said internship. Soon thereafter my "offer" was withdrawn.
>
> [ sic] (Compl. at 3.)

The Complaint further alleges a litany of violations pursuant to Title VII of the Civil Rights Act of 1964 as amended, "and the like, and n.j. [sic] civil rights and human rights law." (Id.) Specifically, Mr. Johnson lists the following violations: unequal terms and conditions of employment, defamation of character, libel, fraud, discrimination, deceptive business practices, negligence, prejudice, breach of contract, failure to perform, unrealized wages, misrepresentation, and misappropriation of state, city, and federal funds. (Id.) Mr. Johnson requests a trial by jury and actual, compensatory, and punitive damages for twenty-four million dollars for pain and suffering, emotional pain, psychological pain, unrecovered wages, defamation, libel, and slander. (Id. at 4.)

PSEG and PSEG Services Corporation filed an Answer on March 25, 2011. Essex County College filed its Answer on April 15, 2011, along with a cross-claim for contribution and indemnification. No answer has been filed by PSE&G as it had not been named as a party defendant. Currently before the Court are two motions for summary judgment filed on December 9, 2011 – one submitted on behalf of PSEG and PSEG Services Corporation, and a second filed by Essex County College. Discovery has been closed.

In its motion for summary judgment, Essex County College first argues that Mr. Johnson "failed to present any competent evidence whatsoever to support any contention that Essex County College had anything whatsoever to do with the PSE&G determination that Johnson had failed to satisfy its employment requirements or background check." (ECC MSJ Br. at 2.)

Second, Essex County College argues, with respect to the tort-based claims including libel, defamation, fraud, negligence, and misrepresentation, that Essex County College is immune from suit as a matter of law based on its status as a non-profit entity created solely to provide education pursuant to N.J.S.A. § 2A:53A-7 et. seq. See also Tonelli v. Board of Education, 185 N.J. 438, 449 (2005); O'Connell v. State, 171 N.J. 484, 491-492 (2002); Graber v. Richard Stockton College, 313 N.J. Super. 476, 485-486 (App. Div. 1998), cert. den.. 156 N.J. 409 (1998).  Regardless of that immunity, Mr. Johnson additionally failed to file timely notice of claim as to the College and thus his action is doomed pursuant to the New Jersey Torts Claims Act, N.J.S.A. § 59: 1-1 et. seq.  See N.J.S.A. § 59:8-8 (requiring formal notice within ninety days of the date of the alleged wrong).

In the motion for summary judgment submitted by PSEG and PSEG Services Corporation, the corporate defendants assert that "the criminal record provided by Plaintiff and the negative driving history provided by the First Advantage Agency together with the inability of First Advantage to verify the criminal background of the Plaintiff led to a determination that Plaintiff did not qualify for the position, based on his unsatisfactory background information." (PSEG et al. Reply Br. at 7.)  Thus, the corporate defendants assert that Mr. Johnson failed to meet the requirements which he agreed to, including successful passage of the background check with no significant patterns of criminal activity within the last five years.

Oral arguments by both parties were heard on October 1, 2012, during which counsel for all PSEG defendants expressly represented PSE&G, which is now properly added to the case as reflected in the caption.

## II.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249. The court is to draw all reasonable inferences in favor of the nonmoving party. El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007) ("In considering the evidence, the court should draw all reasonable inferences against the moving party").

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion

with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. V. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Moreover, the nonmoving party must show by competent evidence that factual disputes regarding material issues of fact exist. "[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995).

Further, the Court must apply a more liberal standard of review to claims presented by a Plaintiff filing pro se. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also United States ex. rel Montgomery v. Brierley, 414 F.2d 552 (3d Cir. 1969). The Third Circuit Court of Appeals advises that a petition made without the benefit of counsel must be read with a measure of tolerance. Wade v. Yeager, 377 F.2d 841, 846 (3d Cir. 1967).

A satisfactory background check was clearly a condition which Mr. Johnson acceded to in the student agreement, and was reiterated in the temporary offer of employment. Mr. Johnson's conditional offer of temporary employment was therefore rescinded when his background check was deemed unsatisfactory by PSE&G based on the totality of his record.

Because the offer was conditional, there was no contract to breach when PSE&G rescinded the offer. Moreover, there is no indication that the EUTD Program generally operates in a predatory fashion; indeed this program has been awarded a variety of prizes and awards for bolstering access and inclusion into the workforce.

The next issue is whether Mr. Johnson was victim to illegal employment discrimination pursuant to Title VII. To prevail on a Title VII claim, a plaintiff must demonstrate that a protected characteristic was the cause of an employment decision.[4] A plaintiff may prove such intentional discrimination via a preponderance of the evidence using either or both circumstantial or direct evidence. See e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90, 99 (2003) (citing U.S. Postal Serv. Bd. Of Governors v. Aikens, 460 U.S. 711, 714 n.3 (1983)).

An employment discrimination claim may be stated under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), or the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons. Because the legitimacy of the background evaluation is in question, the McDonnell Douglas burden-shifting framework applies here. Under that test, Mr. Johnson must first show that: (1)

---

[4] See 42 U.S.C. 2000e-2(a)(2000) (defining unlawful employment practices). The statute states:

(a) It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

11

he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) that after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. See McDonnell Douglas, 411 U.S. at 802.

If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). The employer does not have to prove by preponderance that it took the action for the stated reason. See Tex. Dep't of Cmty. Aff. v. Burdine, 450 U.S. 248, 257 (1981). The employer must articulate a "clear and reasonably specific" explanation for its actions to afford the plaintiff a "full and fair opportunity" to rebut it. Burdine, 450 U.S. at 255-56, 258. The employer accomplishes this by simply explaining what it has done or by "produc[ing] admissible evidence" of a legitimate basis for the decision – evidence that would allow a fact-finder "rationally to conclude that the employment decision" was not the result of discriminatory bias. Id. at 252, 257.

If the defendant carries its burden, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination. See Hicks, 509 U.S. at 507, 508. In this context, pretext means a false explanation that serves to mask unlawful discrimination. See Burdine, 450 U.S. at 253 - 54; McDonnell Douglas, 411 U.S. at 805. Thus, to show pretext, the plaintiff must present evidence from which one can draw an inference of discrimination. See McDonnell Douglas, 411 U.S. at 804-805. An example of evidence which may be relevant to a showing of pretext is where the employer's criteria informing the alleged adverse action is not applied alike to members of all races, or an issue is raised with the general policy and practice with respect to

minority employment. Id. On the latter point, statistics as to employment policy and practice may be helpful to determine whether the alleged adverse action conformed to a general pattern of discrimination against a protected class. Id. "In short, . . . [the plaintiff] must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." Id.

To prove pretext and rebut an employer's legitimate non-discriminatory reasons for an adverse employment action, the employee "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). If the fact-finder does not believe that the employer's stated reason is true, then the fact-finder may infer that the real reason for the action is discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")

The Third Circuit Court of Appeals describes the standards for proof of pretext as follows:

> This requires the employee to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (internal quotations omitted); see Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) ("We have applied the principles explained in Fuentes to require plaintiffs to present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision"). The evidence

> the employee provides need not "include evidence of discrimination [because] . . . in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Kautz, 412 F.3d at 467 (quoting in part Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)) (internal quotations omitted).

Sala v. Hawk, 2012 U.S. App. LEXIS 8821 (3d Cir. May 1, 2012).

Here, PSE&G claims that Mr. Johnson's background proved unsatisfactory upon the totality of a) his criminal history, b) his failure to verify his identity, and c) his driving history. With respect to his criminal history, the only record in question with regard to his candidacy was a charge or arrest which occurred within five years. That charge or arrest did not indicate a guilty conviction, for such a conviction would be listed. This suggests a strong inference of innocence as to the underlying incident. Moreover, PSE&G's own background investigation did not find any criminal history. Indeed, Mr. Johnson self-reported the incident in good faith in his initial application. Aggravating the situation is that PSE&G waited until Mr. Johnson spent one year's worth of course payments, supported by unemployment benefits and grants, and substantial time and effort to complete the EUTD Program, to reject the arrest or charge which did not lead to a conviction and was self-reported from the onset.

Second, PSE&G claims that due to the discrepancy in the criminal history self-reported and the lack of criminal history found in First Advantage's search, that Mr. Johnson's identification was an issue which he failed to resolve pursuant to instructions provided in the May 8, 2009 letter. However upon receiving this letter, Mr. Johnson attempted to resolve the discrepancy with a visit to Human Resources and the production of all paperwork in his possession. PSE&G could have taken better steps to communicate exactly how he could verify his identification. For example, presumably, had PSE&G instructed Mr. Johnson to produce a

14

disposition confirmation notice from the police department which issued the 2006 arrests or charges, Mr. Johnson would have done so, and his identification and criminal history would no longer be at issue.  The third factor contributing to PSE&G's rejection was Mr. Johnson's driving history, which is similarly inconclusive.  Procurement of two points and a suspension and restoration of driving privileges in April 2008, with no previous driving infractions, is uncertain grounds for denying his application altogether.

A reasonable fact-finder could find that PSE&G miscategorized Mr. Johnsons' background as unsatisfactory, and that Mr. Johnson was therefore otherwise qualified for the job.  However, ultimately the issue is that even if the Court were to find that PSE&G may have miscategorized Mr. Johnson's background as unsatisfactory, a reasonable factfinder could not infer illegal discrimination.  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  Reeves, 530 U.S. at 153.

The factual context here is distinguishable from cases which allow for an inference of discrimination based on factual inconsistencies.  For example, in Sala, the Third Circuit Court of Appeals found "stark and glaring contradictions" between the employee's positive annual reviews and the twenty-five reason memorandum submitted by her supervisor in support of his recommendation to not extend her service agreement.  2012 U.S. App. LEXIS at *9.  Thus, the Third Circuit Court of Appeals found that a jury may conclude that the description of her "accomplishments and abilities depicted in her evaluations provide evidence of pretext because they starkly contrast with the reasons proffered in [her supervisor's] memorandum for why her extension should not be granted."  Id.

15

While the factors considered by PSE&G that lead to finding Mr. Johnson's background as unsatisfactory may be tenuous and based on some bureaucratic deficiency, there is no indication, even under a more liberal standard of review, that a fact-finder could infer that the finding itself was a post-hoc fabrication, or that discrimination was more likely than not a determinative cause for PSE&G's failure to hire him.  See id.  See also Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008); McDonnell Douglas, 411 U.S. at 804 ("Petitioner may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.").

To the extent that the tort claims are lodged against Essex County College, despite not having a clear role in employment-related decisions here, the claims against the college are additionally dismissed for failure to comply with the notice requirements set forth by the New Jersey Torts Claims Act, N.J.S.A. § 59: 1-1 et. seq.

### III.  CONCLUSION

For the aforementioned reasons, the motions for summary judgment are hereby GRANTED.  An Order shall be implemented consisted with this Opinion.[5]

                                                  **/s/ Dickinson R. Debevoise**
                                                  **DICKINSON R. DEBEVOISE, U.S.S.D.J.**

Dated:  October 9, 2012

---

[5] Although Mr. Johnson does not have a legal cause of action against PSE&G, for want of a contractual relationship or illegal employment discrimination, equity suggests that PSE&G should elect to refund Mr. Johnson his education costs.  Mr. Johnson acted in good faith throughout the process and resolution was delayed and costs accrued due to PSE&G's bureaucratic deficiency in spotting the issue upon Mr. Johnson's initial application, and communicating the best method for confirming his lack of criminal history within five years prior and any related identification issues stemming therefrom.